# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| Jeffery Jackson,<br><br>      Plaintiff,<br><br>      v.<br><br>David E. Lain, Individually and in his<br>Official Capacity as Sheriff of the Porter County<br>Sheriff's Department; and Captain Thomas<br>Henderson,<br><br>      Defendants. | Civil Action No. 2:13-CV-198 JVB |

## OPINION & ORDER

Plaintiff, Jeffery Jackson, filed this § 1983 lawsuit in Indiana state court after he was fired from his position as an Animal Control Officer with the Porter County Sheriff's Department. Plaintiff alleges that Defendants, Sheriff David Lain and Captain Thomas Henderson, violated his First Amendment right to free speech by retaliating against him after he reported illegal activities that he witnessed while an employee of the Porter County Animal Shelter. Plaintiff maintains that he was treated poorly, denied overtime, and eventually discharged because he was a whistleblower. Plaintiff also raises an equal protection claim stemming from Defendants' treatment of him during his employment. Plaintiff initially alleged state law claims, but has since abandoned them. Defendants removed this case to federal court and have moved for summary judgment on all claims. Defendants contend that Plaintiff has provided insufficient evidence to outline a prima facie case of retaliation or a violation of his right to equal protection.

## A. Background

The Porter County Commissioners hired Plaintiff as an Animal Control Officer in November 2009. (DE 34-2, Pl.'s Dep. 10:13–16, 17:3–5.) In early 2011, Plaintiff encountered "illegal activities" at work and documented these activities. (*Id*. at 22:2–20.) Plaintiff observed that Porter County Jail inmates, brought in to assist the Animal Control staff, were not well supervised. Plaintiff noticed that unsupervised inmates received visitors while working at Animal Control, which gave them access to drugs that were later smuggled into the jail. (*Id*. at 14:1–20.) Additionally, after returning from a 9-1-1 call late one evening, Plaintiff observed three employees stealing money that was donated by local citizens to aid Porter County Animal Control operations. (*Id.* at 21:21–25.)

After witnessing these activities for a few months, Plaintiff spoke to Sheriff Lain, the Porter County Sheriff, to relay his concerns. (*Id*. at 17:11–16.) Sheriff Lain assured Plaintiff that he would improve the supervision of the inmates and directed Plaintiff to alert his employer, the Porter County Commissioners, of these issues. (*Id*. at 17:11–22.) Plaintiff followed Sheriff Lain's advice and relayed his concerns to the Porter County Commissioners. (*Id*. at 18:1–9.) In response, the Porter County Commissioners called a meeting of the entire animal control staff and investigated Plaintiff's claims. (*Id.*)

At the conclusion of the investigation, the Porter County Commissioners relinquished oversight of animal control to the Porter County Sheriff's Department. (DE 34, Pl.'s Resp. at 2.) As a result of this transfer of authority, every animal control staff member was released from their employment on April 11, 2011, and required to reapply for their positions through the Porter County Sheriff's Department. (DE 34-2, Pl.'s Dep. 28:17–24.) Only Plaintiff and two

other individuals retained their job with animal control after this transfer took place. (*Id.* at 28:11–16.) After being hired by the Porter County Sheriff's Department, Plaintiff no longer observed any illegal activity at his workplace. (*Id.* at 28:1–10.) Moreover, due to his experience, Plaintiff assisted in the training of new animal control officers hired by the Porter County Sheriff's Department. (*Id.* at 31:4–9.)

However, Plaintiff and his new supervisor, Captain Thomas Henderson, did clash on a few occasions. Plaintiff alleges that when he began working at the Porter County Sheriff's Department, Captain Henderson warned him not to "go[] over his head" to Sheriff Lain and that he would be fired if he did. (*Id.* at 32:6–20, 36:3–9.) Plaintiff also claims that Captain Henderson improperly denied his overtime pay requests, but still approved overtime compensation for other animal control workers. (*Id*. at 37:14–25, 38:1–17.) The most significant dispute occurred after Plaintiff failed to attend a pepper spray certification class that Captain Henderson had ordered him to attend. (*Id.* at 44:2–25.) Plaintiff was present when Captain Henderson gave a verbal order to attend the class, but believed it was only directed at his two co-workers. (*Id.* at 42:1–11.) Plaintiff did not believe that Captain Henderson's order applied to him because he had previously attended the same class. (Id. at 41:17–23.) As a result of his absence, Sheriff Lain issued a written reprimand to Plaintiff for failing to follow a direct order of a supervisor. (DE 33-11, Ltr. at 1.)

Following his disputes with Henderson, Plaintiff experienced two further setbacks at work. First, Plaintiff was injured while attempting to capture two large dogs and load them into his Animal Control vehicle. (DE 34-2, Pl.'s Dep. 46:15–25, 47:1–24.) After this injury, Plaintiff never returned to work at the Porter County Sheriff's Department because his doctor would not clear him to perform the physical duties of an animal control officer. (*Id*. at 54:5–9.) Second,

3

three months after Plaintiff's injury, Captain Henderson prepared an evaluation memorandum for Sheriff Lain assessing Plaintiff's job performance. (DE 33-12, Mem. at 1–2.) Henderson described Plaintiff's job performance as average, but noted that his report-writing was substandard, he managed his time inefficiently, improperly submitted overtime compensation requests, and "struggled to perform his assigned duties." (*Id*.)

On October 24, 2012, almost a year after Plaintiff's injury, Sheriff Lain informed him that he was "terminated from the Porter County Sheriff's Animal Control." (DE 33-13, Ltr. at 1.) Sheriff Lain outlined three reasons for Plaintiff's termination. First, Plaintiff's doctor-imposed work limitations prevented him from performing the duties of an animal control officer and no light-duty positions were available. (*Id.*) Second, in keeping with the Porter County Policy Manual, the Porter County Sheriff's Department filled Plaintiff's vacant position because he had not returned to work within six months. (*Id*.) Third, Plaintiff's "job performance was substandard and unacceptable and serves as an additional basis [to] warrant termination." (*Id.*) The performance issues listed were: (1) failure to attend training as directed by a supervisor; (2) numerous instances of "below standard performance;" (3) inefficient time management; (4) need for additional supervision; and (5) failure to adhere to Porter County Sheriff's Department's overtime request procedures. (*Id.* at 1–2.)

Plaintiff contends that he was fired for his whistleblowing activity, even though it occurred while he was employed and supervised by the Porter County Commissioners. (DE 34-2, Pl.'s Dep. 61:13–25, 62:1–25.) In support of this claim, Plaintiff points to Henderson's warning about whistleblowing and also alleges coworkers and supervisors asked him on multiple occasions if he was taping their conversations. (*Id*.)

## B. Summary Judgment Standard

A motion for summary judgment must be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Rule 56(c) further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A party seeking summary judgment bears the initial responsibility of informing a court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If the moving party supports its motion for summary judgment with affidavits or other materials, it thereby shifts to the non-moving party the burden of showing that an issue of material fact exists. *Keri v. Bd. of Trust. of Purdue Univ.*, 458 F.3d 620, 628 (7th Cir. 2006).

Rule 56(e) specifies that once a properly supported motion for summary judgment is made, "the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts to establish that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences and resolve all doubts in favor of that party. *Keri*, 458 F.3d at 628. A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the

matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson v. Liberty Lobby*, 477 U.S. 242, 249–50 (1986).

### C. Analysis

Defendants have moved for summary judgment on both of Plaintiff's claims. They assert that Plaintiff cannot establish a prima facie case of retaliation because his speech regarding illegal activities at the Porter County Animal Control was not a motivating factor in his dismissal from employment. Defendants also contend that Plaintiff cannot maintain an equal protection claim, under either the traditional or class-of-one theory, because he has provided insufficient evidence of a prima facie case. For the reasons outlined below, Defendants are correct on both counts.

#### 1. *First Amendment Retaliation Claim*

To succeed in a First Amendment retaliation claim, a plaintiff must demonstrate that "(1) his speech was constitutionally protected; (2) he has suffered a deprivation likely to deter free speech; and (3) his speech was at least a motivating factor in the employer's actions." *Kidwell v. Eisenhauer*, 679 F.3d 957, 964 (7th Cir. 2012). At summary judgment, the burden of proof for these elements is split between the parties. *Id.* at 965. For the third element, the plaintiff must provide evidence that his speech was a motivating factor, or a "sufficient condition," for the employer's retaliatory conduct. *Greene v. Doruff*, 660 F.3d 975, 979–980 (7th Cir. 2011). If the defendant is unable to adequately rebut the causal relationship presented by plaintiff, this condition is satisfied. *Kidwell*, 679 F.3d at 965.

A litigant demonstrates that speech was a motivating factor for the alleged retaliation through either direct or circumstantial evidence. Direct evidence proves a particular fact in question without reliance upon inference or presumption. *Rudin v. Lincoln Land Cmty. Coll.*, 420 F.3d 712, 720 (7th Cir. 2005). In retaliation cases, it is often difficult for a litigant to present direct evidence, because "[d]irect evidence typically consists of an admission by the decisionmaker that he acted with retaliatory intent." *Long v. Teachers' Ret. Sys. of Ill.*, 585 F.3d 344, 350 (7th Cir. 2009).

Circumstantial evidence, which is often much easier to obtain, enables a trier of fact to infer that retaliation occurred. *Rudin*, 420 F.3d at 720–21. "Circumstantial evidence may include suspicious timing, ambiguous oral or written statements, or behavior towards or comments directed at other employees in the protected group." *Long*, 585 F.3d at 350. Regardless of the type of evidence proffered, a plaintiff must demonstrate "that the protected activity and the adverse action are not wholly unrelated." *Sauzek v. Exxon Coal USA, Inc*., 202 F.3d 913, 918 (7th Cir. 2000). To demonstrate that the protected activity and adverse action are not wholly unrelated, plaintiffs must produce facts which somehow tie the adverse decision to the plaintiff's protected actions. *Stagman v. Ryan*, 176 F.3d 986, 1001 (7th Cir. 1999); *Bermudez v. TRC Holdings, Inc*., 138 F.3d 1176, 1179 (7th Cir. 1998). One event preceding another does not show that the first event caused the second. *Bermudez*, 138 F.3d at 1179. Instead, "other circumstances must also be present which reasonably suggest that the two events are somehow related to one another." *Sauzek*, 202 F.3d at 918.

Without examining whether Plaintiff's speech was protected, it is apparent that Plaintiff cannot associate his dismissal with his whistleblowing on the basis of suspicious timing. Plaintiff reported illegal activity to Sheriff Lain and then the Porter County Commissioners. His actions

7

assisted the Porter County Commissioners' investigation of misconduct by animal control officers, which eventually led to corrective action being taken against other animal control employees. Following the investigation and subsequent transfer of animal control to the Porter County Sheriff's Department, Plaintiff and every other animal control employee were forced to reapply for their positions. Plaintiff was one of three employees the Porter County Sheriff's Department hired after the reorganization. Plaintiff concedes that the Porter County Sheriff's Department was not obligated to rehire him as an animal control officer, but chose to despite knowing that he had previously reported misconduct in the workplace.

Unable to make a temporal connection between his speech and termination, Plaintiff also fails to allege any other circumstances that could connect his whistleblowing to his dismissal. Plaintiff admits that his physical limitations brought about by his injury prevented him from performing the duties of an animal control officer. Plaintiff also concedes that he was not a good report writer, but argues that all officers struggled with writing reports. Lastly, Plaintiff admits that he failed to attend training, but dismisses this incident as a miscommunication between himself and Captain Henderson. All of these events, coupled with his subpar performance evaluation, provide a legitimate rationale for Defendants' actions.

Plaintiff argues that Captain Henderson's repeated questions regarding whether Plaintiff was recording their conversations is evidence of retaliation. This argument is unconvincing. Plaintiff asserts that Captain Henderson told him not to go over his head and would often ask him whether he was recording their conversation. What Plaintiff fails to do, which is fatal to his retaliation claim, is provide any connection between these comments and his discharge. While these comments are not indicative of a healthy supervisor-employee relationship, they do not

demonstrate that Plaintiff was fired in retaliation for speech he engaged in before he was hired by the Porter County Sheriff's Department.

While Plaintiff questions the reasons for discharge, "his questions are irrelevant without a prima facie case." *Foster v. Adams*, 489 Fed. Appx. 959, 962 (7th Cir. 2012). Accordingly, Plaintiff's § 1983 claim for retaliation fails.

### 2. *Equal Protection Claim*

Plaintiff contends that he has both a traditional equal protection claim and a class-of-one equal protection claim. Plaintiff is incorrect. Plaintiff cannot proceed under a class-of-one theory because he has failed to distinguish his class-of-one claim from the one presented in *Engquist v. Oregon Department of Agriculture*, 553 U.S. 591 (2008). In *Enquist*, the Supreme Court found that class-of-one claims are inappropriate for public employees. *Id*. The Court reasoned that the class-of-one claims are "'simply a poor fit' in the employment context, which necessarily 'involve[s] discretionary decisionmaking based on a vast array of subjective, individualized assessments.'" *Wade v. Collier*, 783 F.3d 1081, 1089 n.5 (7th Cir. 2015) (citing *Engquist*, 553 U.S. at 603, 605 (2008). Plaintiff has not presented any evidence or argument that Defendants' employment decision exceeds the reach of *Enquist*. *See, e.g., Hanes v. Zurick*, 578 F.3d 491, 495 (7th Cir. 2009) (discussing the limitations of *Enquist* within the Seventh Circuit.). Accordingly, Plaintiff's class-of-one claim fails, which leaves only a traditional equal protection claim for the Court to address.

Equal protection challenges arise most commonly in one of two instances. First, a claim often emerges if a distinction is drawn based on an individual's membership in a suspect class. *Srail v. Vill. of Lisle*, 588 F.3d 940, 943 (7th Cir. 2009) (citing *Martin v. Shwano-Gresham Sch.*

*Dist.*, 295 F.3d 701, 712 (7th Cir. 2002)). Suspect classes include race, alienage, and national origin. *Vision Church v. Vill. of Long Grove*, 468 F.3d 975, 1000 (7th Cir. 2006). The second common equal protection claim arises when an individual is denied a fundamental right, such as the freedom to practice religion or the freedom of speech. *Id.*

If no fundamental right or suspect classification is involved, equal protection claims are evaluated under the rational-basis standard of review. *Discovery House, Inc. v. Consol. City of Indianapolis*, 319 F.3d 277, 282 (7th Cir. 2003); *see also* S*mith v. City of Chi.*, 457 F.3d 643, 650–651 (7th Cir. 2006). To prevail under this standard of review, a plaintiff must prove the defendant: "(1) intentionally treated him differently from others similarly situated; (2) intentionally treated him differently because of his membership in the class to which he belonged; and (3) the difference in treatment was not rationally related to a legitimate state interest." *Smith*, 457 F.3d at 650–651 (citing *Schroeder v. Hamilton Sch. Dist.*, 282 F.3d 946, 950–51 (7th Cir. 2002)).

Here, Plaintiff asserts that he is a member of a suspect class because he is a whistleblower, thus heightening the Court's standard of review. However, Plaintiff provides no support for the principle that whistleblowers enjoy the same protection as members of a suspect class that is based on race, gender, alienage, or national origin.[1] Likewise, Plaintiff does not assert that he has been denied a fundamental right. Consequently, the Court must evaluate Plaintiff's claim using a rational basis standard of review.

---

[1] Plaintiff points to *O'Connor v. Chicago Transit Authority.*, 778 F. Supp. 967, 975 (N.D. Ill. 1991) in support of the principle that whistleblowers are a suspect class. This case does not stand for this principle. Instead, this case turns on whether the Plaintiff, who was a whistleblower, was treated differently than other similarly situated non-whistleblowers. As the Seventh Circuit has found, "[w]histleblowers cannot, by imaginative pleadings, qualify as a class afforded [civil rights protections], for they do not possess any of the characteristics--i.e. race, national origin or gender--which are traditionally part and parcel of discrete and insular minorities." *Hicks v. Resolution Trust Corp.*, 970 F.2d 378, 382 (7th Cir. 1992).

10

Under this standard, Plaintiff has failed to provide sufficient evidence to prove any of the three required elements. First, Plaintiff only makes bare, unsupported assertions that other employees had their overtime requests approved, when his were denied. There is no evidence delineating what happened to other animal control officers' overtime requests. Additionally, Plaintiff provides no benchmarks to describe how he is similarly situated to other employees, other than that they shared the same place of employment. Second, there is no evidence that Plaintiff was treated differently on the basis of his whistleblowing activities. Plaintiff was actually hired by the Porter County Sheriff's Department after his whistleblowing activity, which undermines his claim. In fact, Plaintiff, due to his past experience, trained newly hired animal control employees.

Moving to the third prong, Plaintiff has presented no evidence to overcome the rational basis the Porter County Sheriff's Department had for denying his overtime compensation requests and firing him. Henderson testified that when he reviewed overtime compensation requests he would contrast the work performed and the time requested with the normal productivity of an animal control officer. After this analysis, Henderson would either approve, modify, or deny the request. Henderson maintained that if he determined the overtime hours worked exceeded the time actually necessary to accomplish a task he would modify the amount of overtime on the request and grant it. This sort of cost-conscious use of public funds is rationally related to a legitimate state interest. Likewise, the Porter County Sheriff's Department had a rational basis for terminating Plaintiff from his position since, after a year of convalescing, he was still unable to work. Accordingly, Plaintiff's § 1983 equal protection claim fails.

### D. Conclusion

For the reasons discussed above, Defendants' Motion for Summary Judgment (DE 32) is GRANTED. Additionally, Defendants' Rule 56 Motion to Strike Plaintiff's Supporting Affidavits (DE 36) is denied as moot.

SO ORDERED on July 20, 2015.

 s/ Joseph S. Van Bokkelen
JOSEPH S. VAN BOKKELEN
UNITED STATES DISTRICT JUDGE